IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
IN OPEN COURT

DEC - 6 2018
UNDER SEAL

CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 1:17-CR-295 (CMH) |
| | ) | |
| | ) | COUNT ONE: Making False Statements |
| | ) | (18 U.S.C. § 1001) |
| v. | ) | |
| | ) | COUNT TWO: Obstruction of a |
| | ) | Federal Investigation |
| | ) | (18 U.S.C. § 1519) |
| | ) | |
| ABDIRIZAK HAJI RAGHE WEHELIE, | ) | COUNTS THREE THOUGH SIX: Making False |
| | ) | Statements |
| a/k/a Haji Raghe, | ) | (18 U.S.C. § 1001) |
| a/k/a Abdirizak Wehelie, | ) | |
| | ) | COUNT SEVEN AND EIGHT: Making False |
| | ) | Statements |
| Defendant | ) | (18 U.S.C. § 1001) |

SUPERSEDING INDICTMENT

December Term 2018 – At Alexandria, Virginia

GENERAL ALLEGATIONS

*The Defendant's False Entry in an FBI System*
*Relating to Court-Authorized Surveillance*

1.    From approximately June 2012 through approximately May 2015, the defendant,

ABDIRIZAK HAJI RAGHE WEHELIE, a/k/a Haji Raghe, a/k/a Abdirizak Wehelie was

employed by a government contractor and in that capacity was assigned to work as a linguist and

translator for the Federal Bureau of Investigations. As such, Wehelie would provide full or

partial translations of audio recordings captured on court-authorized surveillance of targets of

FBI investigations. In addition, in place of full or partial translations of the recordings, Wehelie

would in some cases provide brief summaries or notes of similarly-captured audio recordings.

These translations, summaries, and notes were entered on an FBI system that would be reviewed and analyzed by FBI personnel in furtherance of FBI investigations.

2.      While working for the FBI, Wehelie translated conversations captured on court-authorized surveillance of Person A, among others individuals. At all times relevant to this superseding indictment, the court-authorized surveillance of Person A related to a FBI terrorism investigation of Person A, Person B, and others that was being conducted in the Eastern District of Virginia and elsewhere. Person A was suspected of having conspired with and aided and abetted Person B, who traveled to Somalia to join al-Shabaab, a designated foreign terrorist organization. Person B was listed on the FBI's Most Wanted Terrorist List.

3.      On or about December 7, 2012, Wehelie translated a voicemail message that was captured on or about December 6, 2012, by court-authorized surveillance of Person A's cell phone. The message was left by Person A on Wehelie's own voicemail device. Nonetheless, while making the entry on the FBI system for translations, summaries and notes (the "FBI system") regarding Person A's voicemail message, Wehelie marked the person called – himself – as "UM" (an abbreviation used by translators to refer to an "unidentified male" – that is, one whose identity is unknown).

*The Defendant's False Statements in a June 29, 2016, Interview with the FBI*

4.      On or about June 29, 2016, FBI agents interviewed Wehelie concerning his entry on the FBI system translation of the voicemail message that Person A had left on Wehelie's cell phone on December 6, 2012. Wehelie told the FBI agents that when he heard the message left on his own cell phone, he was surprised that Person A was the target of court-authorized surveillance. However, Wehelie admitted in the June 29, 2016, interview that he was aware of a search that was conducted by the FBI at Person A's residence on or about November 15, 2012,

-2-

just three weeks before Person A's voicemail message to Wehelie.  Wehelie told the FBI agents that when he heard the voicemail message on his cell phone, he immediately notified his supervisor.

5.     When Wehelie was asked by the FBI agents about having identified himself as "UM," Wehelie admitted that he had done so.  He also admitted that he should not have identified himself as "UM."

6.     Wehelie initially told the FBI agents that he had never had an actual telephone conversation with Person A and that he had received only one voicemail message from Person A. In fact, however, Person A and Wehelie had two telephone conversation on November 16, 2013, and October 22, 2014, that were captured on court-authorized surveillance.  Wehelie admitted to the FBI agents that it was he on the captured telephone conversations.  Wehelie also admitted that he did not report these two subsequent calls to his supervisor.

7.     Moreover, Wehelie had fully or partially translated audio from court-authorized surveillance on Person A's cell phone on June 28, 2012, and then again from July 4, 2012 through July 11, 2012, and finally on December 7, 2012, when he listened to the December 6, 2012, voicemail message that Person A had left on Wehelie's cell phone.  Also, from June 28, 2012 through July 11, 2012, Wehelie provided 252 summaries or notes on court-authorized surveillance of Person A's cell phone.

8.     At the time of the December 6, 2012, voicemail left by Person A on Wehelie's voicemail, Wehelie's recorded greeting identified himself as "Abdirizak Wehelie," a name by which Wehelie was known.  Shortly after translating this call, Wehelie changed his voicemail greeting to a standard greeting that did not mention his name.

9. Wehelie told the FBI agents that he did not know Person A very well. However, Wehelie and Person A were in cell-phone contact with each other as early as July 2010. Additionally, Wehelie and Person A spoke by cell phone approximately ten times between November 2013 and April 2017. Person A left another voicemail message on Wehelie's cell phone on or about December 13, 2012. There were also approximately ten missed calls (or voicemail greetings with no other content) from Wehelie to Person A, and twenty-five missed calls from Person A to Wehelie. There were also several text messages between the two of them on four separate days in February and May, 2014, and February and April 2017. In all, the FBI investigation revealed that there were 179 unique telephone contacts between Wehelie and Person A between July 2010 and September 2017. Of these, there were 103 unique telephonic contacts between Wehelie's known cell phone number and Person A's known cell phone number between July 15, 2010 and April 20, 2015 – before Wehelie's interview with the FBI on June 29, 2016.

10. Furthermore, while employed as an FBI contract linguist and translator, Wehelie listened to and entered a summary or note in the FBI system for approximately 101 calls from Person A's cell phone to third parties other than Wehelie. In these entries, Wehelie identified Person A by Person A's prior legal name, which continued to be used by Person A as a nickname.

11. On at least three occasions, Wehelie was observed spending time at Person A's store and café. On one of those occasions, he was seen sitting with Person A at a table there and appearing to be very friendly with Person A. Finally, on July 15, 2016, a week after the search of Wehelie's home in connection with the Yusuf Wehelie investigation, Person A sent a text message to someone and provided that person with a new telephone number for Wehelie.

-4-

Thereafter, Wehelie and Person A began to have conversations with each other, and they remained in contact with each other, via this new telephone number.

*The Defendant's False Statements in a July 24, 2017, Interview with the FBI*

12.     On or about July 24, 2017, Wehelie was interviewed by FBI agents. During the interview, Wehelie admitted that he and Person A's father were very close and that he has known Person A since Person A was young. Wehelie said that Person A regarded Wehelie as an uncle.

13.     Wehelie again maintained that after Person A "pop[ped] up," Wehelie notified his supervisor. Wehelie claimed that he notified his supervisor very near the beginning of his work at the FBI when he recognized the voice of Person A on court-authorized surveillance.

COUNT ONE
Making False Statements
*(18 U.S.C. § 1001)*

THE GRAND JURY CHARGES THAT:

1.   The allegations contained in the General Allegations of this Superseding Indictment are incorporated here by reference.

2.   On or about December 7, 2012, in the Eastern District of Virginia and elsewhere, the defendant, ABDIRIZAK HAJI RAGHE WEHELIE, a/k/a Haji Raghe, a/k/a Abdirizak Wehelie, in a matter within the jurisdiction of the executive and judicial branches of the Government of the United States, knowingly and willfully (1) falsified, concealed, and covered up by a trick, scheme, and device a material fact; (2) made a materially false, fictitious, and fraudulent statement and representation; and (3) made and used a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry, the effects of which continued into the Eastern District of Virginia.

3.   In particular, on or about December 7, 2012, while acting in his capacity as a contract linguist and translator, the defendant listened to a December 6, 2012, voicemail message that was left by Person A on Wehelie's own voicemail device. On or about December 7, 2012, while making an entry on an FBI system for translations, summaries, and notes regarding Person A's voicemail message, Wehelie knowingly and willfully falsely marked the person called – himself – as "UM" (an abbreviation used by translators to refer to an "unidentified male" – that is, one whose identity is unknown).

(In violation of 18 U.S.C. § 1001)

COUNT TWO
Obstruction of a Federal Investigation
*18 U.S.C. § 1519*

THE GRAND JURY FURTHER CHARGES THAT:

1.      The allegations contained in the General Allegations of this Superseding Indictment are incorporated here by reference.

2.      On or about December 7, 2012, in the Eastern District of Virginia and elsewhere, the defendant, ABDIRIZAK HAJI RAGHE WEHELIE, a/k/a Haji Raghe, a/k/a Abdirizak Wehelie, knowingly altered, destroyed, mutilated, concealed, covered up, falsified, and made a false entry in a record, document, and tangible object with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, the effects of which continued into the Eastern District of Virginia.

3.      In particular, on or about December 7, 2012, while acting in his capacity as a contract linguist and translator, the defendant listened to a December 6, 2012, voicemail message that was left by Person A on Wehelie's own voicemail device, which, as the defendant well knew, had been captured by court-authorized surveillance of Person A's cell phone in connection with an FBI investigation of Person A and others for providing material support to a designated foreign terrorist organization.  On or about December 7, 2012, while making an entry on an FBI system for translations, summaries, and notes regarding Person A's voicemail message, Wehelie knowingly and willfully falsely marked the person called – himself – as "UM" (an abbreviation used by translators to refer to an "unidentified male" – that is, one whose identity is unknown). (In violation of 18 U.S.C. § 1519)

COUNTS THREE THROUGH SIX
Making False Statements
*(18 U.S.C. § 1001)*

THE GRAND JURY CHARGES THAT:

1.      The allegations contained in the General Allegations of this Superseding
Indictment are incorporated here by reference

2.      On or about June 29, 2016, in the Eastern District of Virginia and elsewhere, the
defendant, ABDIRIZAK HAJI RAGHE WEHELIE, a/k/a Haji Raghe, a/k/a Abdirizak Wehelie,
in a matter within the jurisdiction of the executive and judicial branches of the Government of
the United States, knowingly and willfully (1) falsified, concealed, and covered up by a trick,
scheme, and device a material fact; (2) made a materially false, fictitious, and fraudulent
statement and representation; and (3) made and used a false writing and document knowing the
same to contain a materially false, fictitious, and fraudulent statement and entry, the effects of
which continued into the Eastern District of Virginia.

3.      In particular, when interviewed by FBI agents on or about June 29, 2016, the
defendant knowingly and willfully made four false statements, each false statement constituting
a separate Count of this Superseding Indictment. In particular, the defendant knowingly and
willfully falsely stated that:

COUNT THREE:

When on December 7, 2012, the defendant recognized the voice of Person
A on court-authorized surveillance that the defendant was monitoring, the
defendant immediately notified his supervisor;

COUNT FOUR:

> The defendant was shocked when he learned on December 7, 2012, that
> Person A was the target of court-authorized surveillance;

COUNT FIVE:

> The defendant did not make an entry related to the voicemail message in
> the FBI system for translations, summaries, and notes of court-authorized
> surveillance; and

COUNT SIX:

> The defendant never had an actual telephone conversation with Person A
> and had only received the missed call that resulted in the one voicemail
> message.

(In violation of 18 U.S.C. § 1001)

COUNTS SEVEN AND EIGHT
Making False Statements
*(18 U.S.C. § 1001)*

THE GRAND JURY CHARGES THAT:

1.     The allegations contained in the General Allegations of this Superseding Indictment are incorporated here by reference

2.     On or about July 24, 2017, in the Eastern District of Virginia and elsewhere, the defendant, ABDIRIZAK HAJI RAGHE WEHELIE, a/k/a Haji Raghe, a/k/a Abdirizak Wehelie, in a matter within the jurisdiction of the executive and judicial branches of the Government of the United States, knowingly and willfully (1) falsified, concealed, and covered up by a trick, scheme, and device a material fact; (2) made a materially false, fictitious, and fraudulent statement and representation; and (3) made and used a false writing and document knowing the same to contain a materially false, fictitious, and fraudulent statement and entry.

3.     In particular, when interviewed by FBI agents on or about July 24, 2017, the defendant knowingly and willfully made two false statements, each false statement constituting a separate Count of this Superseding Indictment. In particular, the defendant knowingly and willfully falsely stated that:

COUNT SEVEN:

After Person A "pop[ped] up," the defendant notified his supervisor; and

COUNT EIGHT:

The defendant notified his supervisor very near the beginning of his work at the FBI when he recognized the voice of Person A on court-authorized surveillance.

(In violation of 18 U.S.C. § 1001)

-10-

A TRUE BILL:

Pursuant to the E-Government Act,,
The original of this page has been filed
under seal in the Clerk's Office

Foreman

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

By:

James P. Gillis
Assistant United States Attorney

Kevin C. Nunnally
Trial Attorney
Counterterrorism Section
National Security Division
U.S. Department of Justice