

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABDIRIZAK HAJI RAGHE WEHELIE,<br>a/k/a "Haji Raghe,"<br><br>Defendant. | No. 1:17-CR-295-CMH |

## STATEMENT OF FACTS

The United States and the defendant, Abdirizak Haji Raghe Wehelie, a/k/a Haji Raghe, agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1. On or about June 29, 2016, in the Eastern District of Virginia, the defendant, in a matter within the jurisdiction of the executive branch of the Government of the United States, knowingly and willfully (1) falsified, concealed, and covered up by a trick, scheme, and device a material fact; and (2) made a materially false, fictitious, and fraudulent statement and representation.

2. From approximately June 2012 through approximately May 2015, Wehelie was employed by a government contractor and, in that capacity, was assigned to work as a linguist and translator for the Federal Bureau of Investigation. As such, Wehelie would provide full or partial translations of audio recordings captured on court-authorized surveillance of targets of FBI investigations. In some cases, in place of full or partial translations of the recordings, Wehelie would provide brief summaries or notes of the audio recordings. These translations,

summaries, and notes were entered on an FBI system that would be reviewed and analyzed by FBI personnel in furtherance of FBI investigations.

3. While working for the FBI, Wehelie translated conversations captured on court-authorized surveillance of Person A, among other individuals. On or about December 7, 2012, Wehelie translated a voicemail message that was captured on or about December 6, 2012, by court-authorized surveillance of Person A's mobile telephone. The message was left by Person A on Wehelie's own voicemail device corresponding to mobile telephone number xxx-xxx-6912. Nonetheless, while making the entry on the FBI system, Wehelie marked the person called – himself – as "UM" (an abbreviation used by translators to refer to an "unidentified male" – that is, one whose identity is unknown).

4. On or about June 29, 2016, FBI agents interviewed Wehelie concerning his entry in the FBI system of the translation of the voicemail message that Person A left on Wehelie's mobile telephone.

5. During the June 29, 2016 interview, when Wehelie was asked by the FBI agents about having identified himself as "UM," Wehelie admitted that he had done so. He also admitted that he should not have identified himself as "UM."

6. During the same June 29, 2016 interview, Wehelie initially told the FBI agents that he never had an actual telephone conversation with Person A and that he had received only one voicemail message from Person A. In fact, however, Person A and Wehelie had two telephone conversations on November 16, 2013, and October 22, 2014, that were captured on court-authorized surveillance. When confronted with these two calls during the June 29, 2016 interview, Wehelie admitted to the FBI agents that it was his voice on the captured telephone

conversations. Wehelie also admitted that he did not report these two subsequent calls to his supervisor.

7. Moreover, the FBI system shows that Wehelie had fully or partially translated audio from court-authorized surveillance on Person A's mobile telephone on numerous occasions between June 28, 2012, and December 7, 2012, when he listened to the December 6, 2012, voicemail message that Person A had left on Wehelie's mobile telephone. Also, the FBI system shows that from June 28, 2012 through July 11, 2012, in addition to the fully or partially translated audio, Wehelie produced approximately 101 summaries or notes of court-authorized surveillance of Person A's mobile telephone.

8. At the time of the December 6, 2012, voicemail left by Person A on Wehelie's voicemail, Wehelie's recorded greeting identified himself as "Abdirizak Wehelie," a name by which Wehelie was known. Shortly after translating this call, however, Wehelie changed his voicemail greeting to a standard greeting that did not mention his name.

9. During the June 29, 2016 interview, Wehelie told the FBI agents that he did not know Person A very well. However, telephone toll records show that Wehelie and Person A were in mobile telephone contact with each other as early as July 2010. Additionally, the FBI system shows that Wehelie and Person A spoke by mobile telephone approximately ten times between November 2013 and April 2017. Additionally, the FBI systems shows Person A left another voicemail message on Wehelie's mobile telephone on or about December 13, 2012. The FBI system also shows that there were approximately ten missed calls (or voicemail greetings with no other content) from Wehelie to Person A; twenty-five missed calls from Person A to Wehelie; and text messages between the two on four separate days in February and May 2014, and February and April 2017. In all, the FBI investigation revealed that there were 179

unique telephone contacts between Wehelie and Person A from July 2010 to September 2017. Of these, there were 103 unique telephonic contacts between Wehelie's known mobile telephone number and Person A's known mobile telephone number from July 2010 to April 2015.

10. Further, while employed as an FBI contract linguist and translator, Wehelie listened to and entered a summary or note in the FBI system for approximately 101 calls to or from Person A's mobile telephone to third parties other than Wehelie. In these entries, Wehelie identified Person A by Person A's prior legal name, which continued to be used by Person A as a nickname.

11. Also, on at least three occasions – March 31, 2017, July 17, 2017, and September 18, 2017 – Wehelie was observed spending time at Person A's store and café. Finally, on July 15, 2016, a week after the search of Wehelie's home in connection with an investigation of Wehelie's son, Person A sent a text message to someone and provided that person with a new mobile telephone number for Wehelie. Thereafter, Wehelie and Person A began to have conversations with each other, and they remained in contact with each other, via this new mobile telephone number.

12. The United States is not presently aware of evidence establishing that the defendant (a) informed Person A or any other unauthorized person that Person A was the target of the court-authorized surveillance; (b) discussed with Person A the commission or intended commission of any criminal act; (c) falsified other entries on the FBI system pertaining to court-authorized surveillance of Person A or any other person; or (d) received any compensation or other pecuniary benefit for making a false entry on the FBI system.

13. This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States. It does not include each and every fact

known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

14. The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

Respectfully submitted,

G. ZACHARY TERWILLIGER
UNITED STATES ATTORNEY

Kevin C. Nunnally
Trial Attorney
U.S. Department of Justice
National Security Division
Counterterrorism Section

By: James P. Gillis
Assistant United States Attorney

After consulting with my attorney and pursuant to the plea agreement entered into this day between the defendant, Abdirizak Haji Raghe Wehelie, a/k/a Haji Raghe, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Date: 11/8/19

Abdirizak Haji Raghe Wehelie
Defendant

I am counsel for the defendant, Abdirizak Haji Raghe Wehelie. I have carefully reviewed the above Statement of Facts with him. To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Date: 11/8/19

Nina J. Ginsberg
Counsel for the Defendant

5