IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>ABDIRIZAK HAJI RAGHE WEHELIE,<br>  a/k/a "Haji Raghe,"<br><br>Defendant. | No. 1:17-CR-295-CMH |

GOVERNMENT'S OBJECTION TO PRESENTENCE REPORT

The United States objects to the presentence report insofar as it finds that the defendant has "clearly demonstrated acceptance of responsibility for the offense." We therefore object to the two-point reduction for acceptance of responsibility and respectfully submit that the correct Total Offense Level should be Level 6.

In his statement to the Court, the defendant claims:

> I have made a grave error of judgement. I became emotionally unsettled when I heard my voice on the recording even though I had no reason to react in this manner. My past social interactions with the target were known to my co-workers and supervisor, as was the case with most of my other colleagues who were part of our Somali community. I also believed that an editor would listen to the recording and review my summary of the call, which is generally standard practice in translating services.

PSR ¶ 29.

This is clearly contrary to the statement of facts. First, the defendant's crime was not an "error of judgement," but was in all respects committed deliberately, knowingly, and willfully. The elements of 18 U.S.C. § 1001 require that the false statement be "willful" – as the defendant was assuredly advised by his counsel – and in the statement of facts, the defendant solemnly agreed that he "knowingly and willfully (1) falsified, concealed, and covered up by a trick,

scheme, and device a material fact; and (2) made a materially false, fictitious, and fraudulent statement and representation." PSR ¶ 12. Moreover, the defendant agreed that his actions "were in all respects knowing and deliberate, and were not committed by mistake, accident, or other innocent reason." PSR ¶ 25. The defendant's crime was decidedly *not* an "error of judgement."

Second, the defendant's claim that his "social interactions with [Person A] were known to [his] co-workers and supervisor" is simply false. If a hearing is necessary, the United States would establish, based upon interviews conducted by the FBI during the course of the investigation, that the defendant's supervisor denied that the defendant had told him of his relationship with Person A. Moreover, had the defendant advised him of this, the defendant's supervisor would have discussed with the FBI case agents whether the defendant should be removed from any future monitoring of the coverage on Person A. Similarly, the FBI interviewed a number of the defendant's co-workers, and they too denied any knowledge of the defendant's relationship with Person A. If the defendant wishes to maintain this position, the United States requests that he be required to do so under oath during a hearing at which he would be subject to cross-examination.

Third, as the defendant agreed in his statement of facts:

> At the time of the December 6, 2012, voicemail left by Person A on Wehelie's voicemail, Wehelie's recorded greeting identified himself as "Abdirizak Wehelie," a name by which Wehelie was known. Shortly after translating this call, however, Wehelie changed his voicemail greeting to a standard greeting that did not mention his name.

PSR ¶ 19. If the defendant's relationship with Person A were as widely known as the defendant claims, there would have been no reason for the defendant to change his voicemail greeting so that linguists monitoring future calls would not hear the defendant's name or recognize the defendant's voice.

Fourth, the defendant's claim that his interactions with Person A were well known to his supervisor and colleagues defies common sense. Had his relationship with Person A been well known, it follows that his supervisor and colleagues would have known that he was monitoring the court-authorized surveillance of Person A and would have explicitly or implicitly permitted him to continue to monitor the surveillance. If that were the case, however, there would have been no reason for the defendant to become "emotionally unsettled when [he] heard [his] voice on the recording." Furthermore, had the defendant's relationship with Person A been well known to *FBI* supervisors and translators, there would have been no reason for the defendant to lie to *FBI* agents – twice – about the nature of his relationship with Person A.

Fifth, there would have been no reason for the defendant to lie to the FBI if he had revealed the truth to his supervisor and co-workers. Yet, when interviewed by the FBI, the defendant lied about his relationship with Person A and, as he agreed in his statement of facts, he told "the FBI agents that he did not know Person A very well." PSR ¶ 20. However, "the FBI investigation revealed that there were 179 unique telephone contacts between Wehelie and Person A," at least 103 of which took place before the defendant lied to the FBI about this. *Id*. The defendant also lied to the FBI about the nature and number of telephone conversations he had had with Person A. PSR ¶ 17. This, too, would have been pointless had the defendant's relationship with Person A been known to his FBI supervisors and colleagues.

Sixth, the defendant's claim that he "believed that an editor would listen to the recording and review [his] summary of the call" is also incredible. He has admitted that he "knowingly and willfully" made a false entry on the summary of the intercept of Person A. Yet now he is asking the Court to believe that he *expected* that his crime would be discovered by a subsequent editor who would listen to the recording, discover the misidentification, and correct the

defendant's false entry. Here again, this is a flat-out lie that is contrary to the statement of facts and belied by simple common sense. There would have been no reason for the defendant to "knowingly and willfully" misidentify himself if he expected that an "editor" would soon thereafter correctly identify the defendant in the summary that the defendant falsified.

After offering the Court this string of flimsy excuses, the defendant avows that he "ha[s] no excuse for [his] conduct." This is not an acceptance of responsibility. Instead what is required – and what the defendant still has not done – is to frankly and clearly acknowledge that that he deliberately committed the crime and that he renounce these false justifications for why his crime was not all that serious. To claim that his supervisor knew of the defendant's relationship with Person A, and to offer the incredible excuse that he believed a subsequent "editor" would discover and correct his willfully false entry, minimizes the seriousness of the defendant's crime: he willfully made a false entry on the court-authorized monitoring of an individual suspected of terrorism. This was not an "error of judgment." This was not something he expected to be corrected by an "editor." This was not about a well-known relationship that the defendant had with a terrorism suspect. This was a deliberate, knowing, willful commission of a serious crime affecting a terrorism investigation. Because the defendant has not demonstrated even an appreciation for, let alone an acceptance of, the severity of his crime and his *sole* responsibility for it, the presentence report should reflect no reduction for acceptance of responsibility.

The United States recognizes that whether the defendant receives a two-point reduction will not affect the advisory guidelines range of zero to six months' incarceration and that, because the offense level will remain in Zone A, it will not affect the range of sentencing options available under the advisory guidelines. Nonetheless, we respectfully submit that the

defendant's failure to accept responsibility is a factor that should be seriously taken into consideration when the Court assesses the application of 18 U.S.C. § 3553(a).

                                Respectfully submitted,

                                G. ZACHARY TERWILLIGER
                                UNITED STATES ATTORNEY

By: _____/s/_____
      James P. Gillis
      Virginia Bar No. 65055
      Assistant United States Attorney
      The Justin W. Williams
          United States Attorney's Office
      2100 Jamieson Avenue
      Alexandria, VA 22314
      (703) 299-3700
      (703) 299-3982 (fax)
      James.P.Gillis@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on January 3, 2020, I electronically filed the foregoing using the CM/ECF system, which will send a notification of such filing to counsel of record.

                      Respectfully submitted,

                      /s/
                      James P. Gillis
                      Assistant United States Attorney